## Samuel Willsey v. S. V. R. Wells, Ada Wells LaDue and Frances Wells Forster, Appellants.

*Agreement to sell land.—Remedy for refusal to make title.*

A person having agreed to convey land in fee where his estate was less than a fee, the proposed vendee has a right to insist upon a deed for whatever interest the covenantor has or to repudiate the contract and sue for whatever money he had paid.

*Refusal to make title—Remedies—Evidence—Sheriff's sale of equitable interest.*

A party agreeing to convey, having put it out of his power to do so by a conveyance to some one else, the other contracting party may with his equitable title follow the land if the grantee took title with notice; or he may sue the party to the contract for the recovery of money paid.

Where such grantee, however, takes title without notice, a sheriff's sale of the contracting party's alleged equitable estate is inoperative, and evidence of such sale is incompetent in a suit between the parties to the agreement of sale to recover the purchase money paid.

Argued February 9, 1897. Appeal No. 11, February Term, 1896, by defendants, from judgment of C. P. Clinton Co., May Term, 1894, No. 121, on verdict for plaintiff. Before Rice, P. J., WILLARD, WICKHAM, BEAVER and REEDER, JJ. Affirmed.

Foreign attachment in assumpsit.  Before MAYER, P. J.

The facts sufficiently appear in the opinion of the court.

Verdict and judgment for plaintiff for $936.40.  Defendants appealed.

*Errors assigned* among others were (1) In admitting in evidence the record of the deed from the defendants to Daniel Mulvihill; this for the purpose of showing that after S. V. R. Wells had obtained possession of the article of agreement in the manner in which we allege he did obtain it, that he immediately sold the property for $600.  (2) In admitting in evidence the letter of S. V. R. Wells to John Smith, Esq.; the purpose of the offer being to show that previous to the time he obtained possession of the agreement, he had been making offers and had negotiated a sale of his property to Daniel Mulvihill, two months before the date when it is alleged that he obtained the surrender of this agreement.  A copy of the letter is as follows:

"WESTFIELD, N. Y., Sept. 12, 1889.

"JOHN SMITH, ESQ., Renovo, Pa.:

"Dear Sir:   John W. Forster writes me that Mr. Dan. Mulvihill has accepted my proposition to buy my 10th street property at $600, six hundred dollars, two hundred dollars down and $50.00 fifty dollars every six months, with interest.  Balance of $400 to be secured by bond and mortgage, wife to sign mortgage and bond if he has one.

"Please execute the papers according to the statute of your state and send the deed to me to sign, and in the meantime ascertain the amount of taxes against the place.  Pay them so you can give Mr. Mulvihill a receipt for the same.  And after taking your fees and paying taxes pay J. W. Forster $25.00 as a present from his grandpa, then send me the balance by N. Y. draft, less the exchange.

                    "Yours truly,
                              "S. V. R. WELLS.

"P. S.—Mr. Smith, this is property I bought for my son, Henry E. Wells, and the deed is in his name and reverts to me by heirship, and you can make the deed so that a claim of title

can be traced. H. E. Wells died without issue. I have no wife. I send you the deed. I think this is all that is necessary.                    Yours, etc.,

"S. V. R. WELLS."

(3) In charging the jury : "Where a vendor sells to a vendee real estate by articles of agreement and subsequently the vendor executes and delivers a deed to another party and puts the deed on record, the vendee has a right to bring an action to recover the purchase money. He can declare the contract rescinded and recover back the purchase money paid on the agreement where the vendor has executed and delivered a deed for the same property to another party and put the deed on record." (4) In charging the jury as follows : "But the plaintiff alleges that this agreement of surrender was never signed by him. He states that no such an agreement was made between him and Wells and that the paper which purports to have been signed by him was not signed by him, but on the contrary alleges it is a forgery. This is a question of fact which the jury must determine under the evidence, and we submit it to you, . . . . it will be for you to determine by the evidence whether the receipt indorsed on the back of this agreement is a genuine receipt and was executed by Willsey as claimed by the defendants. . . . If, however, the jury are fully satisfied, and as I have already said to you the evidence must be clear and satisfactory, if you are fully satisfied that the paper is a forgery, then we say to you the plaintiff would be entitled to recover back the amount of the purchase money, $685, and interest upon it from the time it was paid." (7) In their answer to defendants' fifth point, which point and answer thereto are as follows : "5. That the deed of the above-named defendants to Daniel Mulvihill offered in evidence conveyed no more to the said Mulvihill than the interest which the defendants had at the time, and did not deprive the plaintiff of any equities which he had in the property at that time. *Answer :* That point is refused." (9) In their answer to the defendants' seventh point, which point and answer are as follows : "7. That the deed from the defendants to the said Mulvihill did not affect the equitable title of the plaintiff, and that he had the same remedy against the said Mulvihill for the possession of the property as he would have had against the

said Wells, or against said defendants if the deed to Mulvihill had not been executed and delivered. *Answer:* That point is also refused." (11) In their answer to defendants' ninth point, which point and answer thereto are as follows: "9. That the judgment of P. O'Hagan & Son against the said plaintiff offered in evidence, which was entered in 1888, was a lien upon the equitable title of the said plaintiff, and the sheriff's deed to James O'Hagan, made in pursuance of the sale on said judgment, divested the equitable title of the plaintiff before this suit was brought, and therefore the plaintiff has not been injured, and he has no right of action in this case. *Answer:* That point is refused." (12) Refusal of binding instructions for defendant. (14) Sustaining objections and excluding the offer in evidence of the record of the judgment of Peter O'Hagan & Son v. Samuel Willsey; the purpose of this offer being to show that the equitable title, all the title of the plaintiffs, had been divested before the bringing of this suit.

*W. C. Kress,* with him *B. F. Geary,* for appellant.—The principles covered by these assignments of error are so nearly identical as to make it convenient to consider them together. The testimony of the plaintiff shows that he was in possession of the property at the time the deed was made to Mulvihill. He says that his tenant moved out immediately after the deed was made. That being the case, Mulvihill took the legal title with notice of Willsey's equity. He, therefore, stood in Wells's place in respect to the covenant of sale. He was subject to the same duty as Wells, and bound to perform all that Wells would have been bound to perform, were the legal title yet in him: Kerr v. Day, 14 Pa. 112; Taylor v. Stibbert, 2 Vesey, 437; Crofton v. Ormsby, 2 Sch. & Lef. 583.

The possession by a vendor under articles of agreement is notice to third persons that he is the equitable owner of the land contracted to be conveyed, and that his vendor holds the legal title in trust for him, and a party, who, with notice of such outstanding equity, takes the conveyance of the legal title from the vendor, succeeds to the rights and obligations of his grantor: White v. Patterson, 139 Pa. 429; Hottenstein v. Lerch, 104 Pa. 454; Rowe v. Ream, 105 Pa. 543; Pomeroy's Eq. Jur., sec. 368; Brightley's Eq. Jur., sec. 243.

There is no longer any doubt that in this state such an equitable interest as plaintiff had can be bound by the lien of the judgment: Foster's Appeal, 87 Pa. 67; Russell's Appeal, 15 Pa. 319; Vierheller's Appeal, 24 Pa. 105.

The purchaser at a sheriff's sale acquires the interest in the land which the defendant had, at the time the judgment, under which it was sold, attached, unaffected by subsequent incumbrances or conveyances made by the debtor : Coulter v. Philips, 20 Pa. 154.

The purchaser at a sheriff's sale may have a better title than the debtor had at the time of the sale; his title dates, in many respects, from the lien of the judgment.   He holds, discharged of latent trusts and of intervening conveyances, leases and incumbrances made by the debtor : McCormick v. McMurtrie, 4 Watts, 192.

"No contract," says Mr. Justice DUNCAN, in Lenox v. McCall, 3 S. & R. 94, "between the lessee and the debtor can deprive or delay the creditor of the benefit of his judgment, or the purchaser at sheriff's sale of the benefit of his purchase."

*H. T. Harvey*, for appellee.—Assumpsit for money had and received is frequently brought to recover back the deposits of money paid upon an agreement which the defendant omits or refuses to perform, and on a single count in the common form, various sums received at different times may be recovered: 1 Chitty on Pl., 368; Sugden on Vendors, p. 236, sec. 39; Feay v. Decamp, 15 S. & R. 227; Smethurst v. Woolston, 5 W. & S. 109; Wilkinson v. Ferree, 24 Pa. 190; Miller v. Phillips, 31 Pa. 218; Ins. Co. v. McAden, 109 Pa. 399.

" Every equitable title is incomplete on its face, and therefore every purchaser of a mere equity takes it subject to every clog that may lie on it, whether he has had notice of it or not." The same doctrine is asserted in Reed v. Dickey, 2 Watts, 459, Kramer v. Arthurs, 7 Pa. 165, and Rhines v. Baird, 41 Pa. 256.

It is well settled that where land which has been fraudulently acquired is sold to a bona fide purchaser and reconveyed by him to the vendor, the latter will be as much bound to make restitution to the rightful owner as he was before the sale : Schutt v. Large, 6 Barb. 373; 2 Lead. Cases, Eq., p. 40.

Equity will not permit one to hold a benefit which he has ac-

quired through the fraud of another, and much less will it do so if he has acquired it by means of his own fraud: Sheriff v. Neal, 6 Watts, 534.

OPINION BY REEDER, J., July 23, 1897:

After the articles of agreement had been executed by which S. V. R. Wells agreed to convey to Willsey the land in fee, and after Willsey had been in possession of the land for several years and had paid a considerable portion of the purchase money, Willsey discovered that Wells did not own the land in fee, and "could not and would not make a deed to him" for the property. The title of the land in question had been in the defendant's son, Henry V. Wells. After his death, the title passed by inheritance to Wells and his two daughters. He had no power of attorney to act for them, but undertook to convey their title without their consent. Wells, upon one occasion after the execution of the agreement, called at Willsey's house and asked to see Willsey. He was told that Willsey was not in. Mrs. Willsey then asked him if he would give them a deed for the house. Wells replied that he "would not give a deed for the property; that the property did not belong to him, and that he could not nor would not give a deed." Afterward, and before this suit was commenced, Wells and his two daughters executed a deed conveying the property to Daniel Mulvihill. After the articles of agreement were entered into, and after Willsey discovered Wells's inability to convey any but his own interest in the property, which was less than an estate in fee simple, he had a right to insist upon a deed for whatever interest Wells had in the property, or to repudiate the contract and sue for whatever money he had paid to Wells under the articles of agreement on account of the purchase money of the land.

It is unnecessary to cite authorities to support this elementary and well-known principle of law. The party agreeing to convey can also put it out of his power to convey the land to the other party to the agreement by a conveyance to some one else. The choice of remedies would remain, in this instance, to the other contracting party to follow the land with his equitable interest, if the grantee took the title after notice of the other's equitable interest, or to sue the first party to the contract for the recovery of the money paid upon the agreement:

Feay v. DeCamp, 15 S. & R. 227; Newcomb v. Brackett, 16 Mass. 161.

In this case, however, we cannot consider the former proposition. The articles of agreement were not recorded; Willsey was not in the occupancy of the property, the house being vacant at the time of the deed to Mulvihill, and he, therefore, took his deed without notice, and no equitable interest of Willsey's could follow the land into the possession of Mulvihill, even though Wells had the title to, or the power to convey, the whole of the property, which he never had.

The conditions seemed, upon first examination, to be complicated by the sale to O'Hagan. O'Hagan procured a judgment against Willsey, which was entered of record in 1888. The defendants offered to prove that at a sale upon a writ of venditioni exponas this property was purchased by O'Hagan, and the sheriff's deed delivered to him January 11, 1893, which was rejected by the court. Subsequently, on February 10, 1893, a deed for this property was given by O'Hagan to Wells and his two daughters. The offer of this deed was also rejected by the court.

The question presented for our consideration would be a difficult one, had the deed from Wells and his two daughters to Mulvihill postdated the sale to O'Hagan, and from him to Wells. But Wells had himself repudiated the contract of sale to Willsey by his deed to Mulvihill on November 25, 1889. Before the time of the sheriff's sale, Wells had disaffirmed the contract; and, even though Wells had attempted to assert them, his equities had been divested because the articles of agreement had not been recorded, and there was no proof that Mulvihill ever had notice of their existence, except so far as notice to Mulvihill might be implied by the occupancy of the premises by Willsey's tenant.

What the effect of his removal, at the same time as the giving of the deed to Mulvihill might have had upon his equities, it is unnecessary for us to determine. The fact that Wells could never have conveyed title to the property, as he was the owner of only a life estate, is sufficient for our determination of the question before us. The entire property was conveyed to Mulvihill by all the owners. Willsey at once surrendered the possession of the property to Mulvihill, and the only right that

was left him was the right to recover from Wells the amount paid as purchase money under the articles of agreement. There was nothing of Willsey's left for O'Hagan to take by his purchase at the sheriff's sale, and the offer of the sheriff's deed and his deed to Wells were properly excluded.

It is contended by the appellant that, because the statement contains the averment that " Wells, for himself, and for and on behalf of, and with the knowledge and consent of, Ada LaDue and Frances Wells Forster, made an agreement with the plaintiff, Samuel Willsey, then residing in Renovo, by the terms of which," etc., the plaintiff could only recover on the theory of facts contained in his statement; and that, unless his proof accorded with the facts as set forth in the statement, he was not entitled to recover at all.

During the trial of the cause, a petition from the plaintiff was presented to the court to amend the record by striking out the names of Ada Wells LaDue and Frances Wells Forster as defendants, and " a nolle pros. entered as to them." This amendment was allowed. The allowance by the court below of this amendment struck out all allegations of liability on the part of Ada Wells LaDue and Frances Wells Forster from the entire record, eliminating them not only as defendants, but eliminating from the statement of claim itself all averments which would make them liable as defendants. The amendment was made after the court had ruled that under the evidence the plaintiff had no right of action against these two defendants, and it was made, evidently, to make the entire record conform to this position of the court. Therefore, when the allegation as to the liability of Ada Wells LaDue and Frances Wells Forster was stricken from the record, as they were by this amendment, there were no averments left in the statement of claim with which the proof in the case did not accord.

We have, in this general way disposed of all the material questions raised by the assignments of error. Those which we have not discussed are without merit.

Judgment affirmed.